COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                                NO.
 2-08-276-CR

 

 

SAMUEL LEE HILBURN                                                                     APPELLANT

 

                                                             V.

 

THE STATE OF TEXAS                                                                             STATE

 

                                                       ------------

 

          FROM
CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

 

                                                       ------------

 

                                                      OPINION

 

                                                       ------------

I. 
Introduction

Appellant
Samuel Lee Hilburn appeals his conviction for intoxication manslaughter.[1]  He contends in four points that the evidence
is legally and factually insufficient to prove beyond a reasonable doubt that
he caused a police officer=s
death Aby
driving his vehicle into and against@ the
officer=s
patrol car or that his vehicle constituted a deadly weapon.  We affirm.








II. 
Factual Background

In
the early morning hours of December 17, 2006, Adriana Delgadillo was driving
south on Interstate 35 in Fort Worth when she noticed her car had a flat
tire.  She pulled onto the right shoulder
of the highway and called a friend, Roy Delgado, to assist her.  Delgado arrived within five minutes and
parked his pickup truck on the shoulder in front of Delgadillo=s
car.  Delgado tried to remove the tire
but could not because it had a lock on it, so Delgadillo called for roadside
assistance.

Fort
Worth Police Officer Dwayne Freeto arrived shortly thereafter and parked his
patrol car on the shoulder behind Delgadillo=s
car, but he left his patrol car=s
emergency lights on while he also tried to remove the flat tire from Delgadillo=s
car.  Officer Freeto was also unable to
remove the tire, so he told Delgadillo he would wait until roadside assistance
arrived.  Officer Freeto went back to his
patrol car, and Delgadillo and Delgado sat in Delgadillo=s
car to wait for roadside assistance. 
While they waited, Appellant=s
car rear-ended Officer Freeto=s
patrol car.  Officer Freeto=s
patrol car immediately erupted into flames, with Officer Freeto trapped
inside.  Delgado exited Delgadillo=s
car, ran back to the patrol car, and unsuccessfully tried to break the
driver-side window with his fists.  He
then retrieved the vehicle jack from Delgadillo=s
car and used it to break the passenger-side window on the patrol car.








Officer
Rockney Malone, a Fort Worth vice officer whose shift had ended at 3:00 a.m.,
was driving home from work when Appellant=s
vehicle passed him at a high rate of speed.[2]  Officer Malone watched Appellant=s
vehicle crash into Officer Freeto=s
patrol car, causing an instant explosion. 
Officer Malone pulled over and saw Appellant get out of his car, take a
couple steps, fall down, and roll onto his back.  Officer Malone dragged Appellant onto the
shoulder of the road and ran to Officer Freeto=s
patrol car but could not see inside because of the smoke.  Another driver, Jimmy Ozuna, also stopped to
help, and Officer Malone, Delgado, and Ozuna tried to break the patrol car=s
windows to rescue Officer Freeto from the fire. 
Ozuna testified that he could see Officer Freeto moving inside the
patrol car. 

Robert
McDonald, a certified EMT, drove up to the scene and stopped to help.  McDonald sprayed a small fire extinguisher
through the broken passenger window.  The
fire extinguisher helped only momentarily; the fire completely engulfed the
patrol car.  The paramedics on the scene
then pulled everyone back from the patrol car and said there was nothing more
anyone could do. 








McDonald
then turned his attention to Appellant. 
McDonald could see that Appellant had cuts and abrasions on his hands
and arms and burns on his face and head. 
Appellant was conscious, coherent, and answered McDonald=s
questions appropriately without slurring his words, but McDonald could smell
the odor of alcohol on Appellant=s
breath.  Appellant was taken to the
hospital for treatment of his injuries. 
While he was there, hospital nurses took samples of Appellant=s
blood at the investigating officer=s
request.  The toxicologist testified
that, based on the blood draws, she believed Appellant had a blood-alcohol
level between 0.18 and 0.22 at the time of the collision.

At
Appellant=s
trial, accident reconstructionist Tim Lovett testified that Appellant was
driving more than ninety-seven miles per hour at the time of the
collision.  Lovett testified that the
emergency lights on Officer Freeto=s
patrol car would have been visible at a distance of 1,250 feet, meaning
Appellant, even at ninety-seven miles per hour, had more than eight seconds to
take action to avoid a collision with Officer Freeto=s
patrol car.  Despite the reaction time,
Lovett saw no physical evidence that Appellant had tried to brake or steer
evasively to avoid the collision.  Lovett
also testified that the patrol car had caught fire because Appellant drove his
vehicle into the back of the patrol car. 

The
chief medical examiner for Tarrant County, Dr. Nizam Peerwani, testified at
trial that Officer Freeto was alive when the fire in his patrol car started and
that he had died from inhaling hot air, poisonous gases, fumes, and smoke.  He stated that Officer Freeto did not die of
blunt force trauma, but he also testified that Officer Freeto had Adied
as a result of the impact which B
which caused the fire.@  Dr. Peerwani testified that the official
cause of death was a motor vehicle collision with fire.








Ashley
Woodall, Lauren Coffman, and Daniel Escamilla testified for Appellant at
trial.  They explained that the three of
them and Appellant had gone to two different clubs in Fort Worth beginning at
around 11 p.m. and ending at around 3 a.m. 
They testified that they saw Appellant drink one beer that evening and
that Appellant did not appear to be intoxicated or show any outward signs of
being intoxicated.

                                        III.  Procedural Background

A
grand jury indicted Appellant in March 2007. 
The indictment alleged that Appellant had Aoperate[d]
a motor vehicle in a public place while intoxicated, and did by reason of such
intoxication cause the death of another, Dwayne Freeto, through accident and
mistake, namely: by driving said motor vehicle into and against a motor vehicle
occupied by the said Dwayne Freeto.@  The indictment also alleged that Appellant
had used his motor vehicle as a deadly weapon. 
Appellant pleaded not guilty, but at the conclusion of his jury trial,
the jury returned a verdict of guilty, answered affirmatively to the deadly
weapon special issue, and assessed punishment at thirteen years=
confinement. The trial court sentenced Appellant accordingly.

IV. 
Standards of Review

A.  Legal Sufficiency








In
reviewing the legal sufficiency of the evidence to support a conviction, we
view all of the evidence in the light most favorable to the prosecution in
order to determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319,
99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235 S.W.3d 772, 778 (Tex.
Crim. App. 2007).

This
standard gives full play to the responsibility of the trier of fact to resolve
conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences
from basic facts to ultimate facts.  Jackson,
443 U.S. at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.  The trier of fact is the sole judge of the
weight and credibility of the evidence.  See
Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Brown v. State, 270
S.W.3d 564, 568 (Tex. Crim. App. 2008), cert. denied, 129 S. Ct. 2075
(2009).  Thus, when performing a legal
sufficiency review, we may not re-evaluate the weight and credibility of the
evidence and substitute our judgment for that of the factfinder.  Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).  Instead, we Adetermine
whether the necessary inferences are reasonable based upon the combined and cumulative
force of all the evidence when viewed in the light most favorable to the
verdict.@  Hooper v. State, 214 S.W.3d 9, 16B17
(Tex. Crim. App. 2007).  We must presume
that the factfinder resolved any conflicting inferences in favor of the
prosecution and defer to that resolution. 
Jackson, 443 U.S. at 326, 99 S. Ct. at 2793; Clayton, 235
S.W.3d at 778.

B.  Factual Sufficiency








When
reviewing the factual sufficiency of the evidence to support a conviction, we
view all the evidence in a neutral light, favoring neither party.  Steadman v. State, 280 S.W.3d 242, 246
(Tex. Crim. App. 2009); Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim.
App. 2006).  We then ask whether the
evidence supporting the conviction, although legally sufficient, is
nevertheless so weak that the factfinder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
factfinder=s
determination is manifestly unjust.  Steadman, 280 S.W.3d at 246; Watson,
204 S.W.3d at 414B15, 417.  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, although legally sufficient, contradicts the
verdict.  Watson, 204 S.W.3d at
417.

Unless
we conclude that it is necessary to correct manifest injustice, we must give
due deference to the factfinder=s
determinations, Aparticularly those
determinations concerning the weight and credibility of the evidence.@  Johnson v. State, 23 S.W.3d 1, 9 (Tex.
Crim. App. 2000); see Steadman, 280 S.W.3d at 246.  Evidence is always factually sufficient when
it preponderates in favor of the conviction. 
Steadman, 280 S.W.3d at 247; see Watson, 204 S.W.3d at
417.

V. 
Analysis

A.  Alleged Variance Between Indictment and Proof








Appellant
contends in his first and second points that the evidence is legally and
factually insufficient to prove he caused Officer Freeto=s
death by Adriving
his vehicle into and against@
Officer Freeto=s
patrol car.  Appellant argues the
indictment required the State to prove Officer Freeto died from the impact
between the vehicles and contends the State proved Officer Freeto died from the
fire, not the impact.  Appellant
therefore argues there is a fatal variance between the indicted offense and the
proof adduced at trial.

A
variance occurs when there is a discrepancy between the allegations in the
charging instrument and the proof at trial. 
Gollihar v. State, 46 S.W.3d 243, 246 (Tex. Crim. App.
2001).  In a variance situation, the
State proves the defendant guilty of a crime, but proves the crime=s
commission in a manner that differs from the allegations in the charging
instrument.  Id.  But not all variances are material or
fatal.  Id. at 257.  A variance between the wording of an
indictment and the evidence presented at trial is fatal only if it is material
and prejudices the defendant=s substantial
rights.  Id.; see Fuller v.
State, 73 S.W.3d 250, 253 (Tex. Crim. App. 2002).  In reviewing the materiality of such a
variance, we must determine whether the variance deprived the defendant of
notice of the charges and whether the variance subjects the defendant to the
risk of being prosecuted later for the same crime.  Fuller, 73 S.W.3d at 253; Gollihar,
46 S.W.3d at 257.








In Megas
v. State, Megas argued there was a fatal variance between his indictment
and the proof at his trial because the indictment charged him with causing his
passenger=s
death by colliding into a concrete barrier but the evidence at trial suggested
the passenger died when Megas=s
car landed on her.  68 S.W.3d 234, 241
(Tex. App.CHouston
[1st Dist.] 2002, pet. ref=d).  Rejecting Megas=s
fatal variance argument, the court explained:

The medical examiner testified the injuries
that killed [the passenger] were caused by the car=s colliding with the
concrete barrier.  Officer Leslie
Stafford testified that the car collided with the concrete barrier, causing
[the passenger] to be partially ejected out of the car, and that when the car
flipped on its roof, it rolled on top of [the passenger] and crushed her.  Stafford also testified that the car would
not have flipped over and crushed [the passenger] if [Megas] had not hit the
concrete barrier with his car.

 

The cause of [the passenger=s] death is directly
related to appellant=s striking the
concrete barrier.  The indictment charges
the cause of death as colliding with the barrier, and the evidence shows the
collision did cause the death of [the passenger].  The variance is not material. 

 

Id.
(citations omitted).








Here,
the indictment alleged in relevant part that Appellant had caused Officer
Freeto=s
death by driving his motor vehicle Ainto
and against a motor vehicle occupied by the said Dwayne Freeto.@  Although the medical examiner testified that
Officer Freeto did not die from blunt force trauma, the medical examiner
explained that Officer Freeto had Adied
as a result of the impact which B
which caused the fire.@  The accident reconstructionist similarly
testified Officer Freeto=s patrol car had caught fire
because Appellant drove his vehicle into the back of the patrol car.  Even assuming the indictment=s Ainto
and against@
language required the State to prove the impact between the two vehicles caused
Officer Freeto=s
death, we hold the variance, if any, between the indictment and the proof
adduced at trial is not material.[3]  See id.  Moreover, Appellant has not explained how the
alleged variance prevented him from preparing a defense or how he could be
prosecuted again under the same facts.  See
Fuller, 73 S.W.3d at 253; Megas, 68 S.W.3d at 241.  We will therefore disregard the alleged
variance in determining whether the evidence is sufficient to prove Appellant
caused Officer Freeto=s death by driving his
vehicle Ainto
and against@
Officer Freeto=s
patrol car.

1.  The Evidence is Legally Sufficient

A
person commits intoxication manslaughter if the person (1) operates a motor
vehicle in a public place, (2) is intoxicated, and (3) by reason of that
intoxication causes the death of another by accident or mistake.  Tex. Penal Code Ann. '
49.08.  Appellant argues only that the
evidence is legally insufficient to prove he caused Officer Freeto=s
death Aby
driving his vehicle into and against@
Officer Freeto=s
patrol car; he does not contend the evidence is legally insufficient to prove
that he operated a motor vehicle in a public place, that he was intoxicated, or
that his intoxication caused him to drive his vehicle into Officer Freeto=s
patrol car.








The
record contains legally sufficient evidence that Appellant caused Officer
Freeto=s
death Aby
driving his vehicle into and against@
Officer Freeto=s
patrol car.  Two witnesses, Officer
Malone and Ozuna, testified that they had seen Appellant=s
car collide into the rear of Officer Freeto=s
patrol car and that they saw an immediate explosion.  Lovett, the accident reconstructionist,
testified that the impact between Appellant=s
vehicle and Officer Freeto=s
patrol car had caused the fuel in the patrol car=s
fuel tank to spray out of the fuel tank. 
The escaping fuel ignited from sparks caused by metal scraping the
roadway or from contact with hot exhaust pipes. 
Lovett testified that the flames were a direct result of the impact
between Appellant=s vehicle and Officer Freeto=s
patrol car.  Dr. Peerwani testified that
Officer Freeto had Adied as a result of the
impact . . . which caused the fire.@ 

Viewing
the evidence in a light most favorable to the prosecution, a rational jury
could have determined beyond a reasonable doubt that Appellant had caused
Officer Freeto=s
death Aby
driving his vehicle into and against@
Officer Freeto=s
patrol car.  See Jackson,
443 U.S. at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.  We hold the evidence was legally sufficient
to support the jury=s verdict.  We overrule Appellant=s
first point.

2.  The Evidence is Factually Sufficient








Reviewing
all the evidence in a neutral light, we recall that Officer Freeto=s
patrol car was a Ford Crown Victoria and that the State=s
expert acknowledged a past problem with Crown Victorias exploding when hit from
behind.  Moreover, Dr. Peerwani testified
that Officer Freeto was alive when the fire in his patrol car started and that
he did not die of blunt force trauma; Dr. Peerwani explained that Officer
Freeto had died from inhaling hot air, poisonous gases, fumes, and smoke.  However, Dr. Peerwani also testified that the
official cause of death was a motor vehicle collision with fire and that Officer
Freeto had Adied
as a result of the impact which B
which caused the fire.@  Officer Malone and Ozuna testified the
explosion had occurred immediately upon impact, Delgado testified the patrol
car was already on fire before it collided with Delgadillo=s
car, and Lovett testified the fire would not have occurred without the
impact.  Lovett also testified that the
recall for the fire problem in Crown Victorias was for the 1999 through 2003
models and that Officer Freeto=s
Crown Victoria was a 2005 model.

Viewing
the evidence in a neutral light, we conclude a rational trier of fact could
have found beyond a reasonable doubt that Appellant had caused Officer Freeto=s
death Aby
driving his vehicle into and against@
Officer Freeto=s
patrol car.  We cannot say that the
evidence is so weak that the jury=s
determination was clearly wrong or manifestly unjust or that the conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
jury=s
determination is manifestly unjust.  See
Lancon v. State, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008); Watson,
204 S.W.3d at 414B15, 417.  We therefore hold the evidence was factually
sufficient to support the jury=s
verdict.  We overrule Appellant=s
second point.

B.  Appellant=s
Vehicle as a Deadly Weapon








Appellant
argues in his third and fourth points that the evidence was legally and
factually insufficient to prove beyond a reasonable doubt that his vehicle
constituted a deadly weapon.  A deadly
weapon is anything that in the manner of its use or intended use is capable of
causing death or serious bodily injury. 
Tex. Penal Code Ann. ' 1.07(a)(17)
(Vernon Supp. 2009).  AIt
is reasonably clear that driving an automobile constitutes the use of it and
that driving [an automobile] in a manner capable of causing death or serious
bodily injury constitutes [the automobile] a deadly weapon.@  Tyra v. State, 897 S.W.2d 796, 798
(Tex. Crim. App. 1995).

1.  Appellant=s
Contentions

Appellant
concedes a motor vehicle can be a deadly weapon.  Instead, he argues there can be no Aintended
use@ of
the motor vehicle when the indictment alleges the offense occurred through Aaccident
and mistake.@  However, the court of criminal appeals decided
this issue to the contrary in Walker v. State.  See 897 S.W.2d 812, 813B14
(Tex. Crim. App. 1995).  Walker argued
that Athere
can be no affirmative finding of a deadly weapon in a prosecution for
involuntary manslaughter by accident or mistake from the intoxicated operation
of a motor vehicle@ because an affirmative
finding requires Asome intent or desire to use
the instrument of death as a weapon.@  Id. at 813.  The court of criminal appeals disagreed and
held that Ait
is evident that not all deadly weapons need be used with an intent to achieve a
specific purpose@ and that to support an
affirmative deadly weapon finding, Ano
intent to use the automobile as a weapon need be shown.@  Id. at 814; see also Dotson v.
State, 146 S.W.3d 285, 299B300
(Tex. App.CFort
Worth 2004, pet. ref=d) (rejecting the appellant=s
contention that a deadly weapon finding is improper merely because offense of
manslaughter requires less than intentional conduct).













Appellant
also contends his motor vehicle was not a deadly weapon because Officer Freeto
died from the fire, not the impact from Appellant=s
vehicle.  First, Appellant ignores the
evidence that the fire that killed Officer Freeto would not have occurred had
Appellant not driven his vehicle into the back of Officer Freeto=s
patrol car.  Second, Appellant omits that
the definition of a deadly weapon under section 1.07(a)(17)(B) includes Aanything
that in the manner of its use or intended use is capable of causing
death or serious bodily injury.@
(emphasis added)  See Tex. Penal
Code Ann. '
1.07(a)(17)(B).  There is no requirement
that the deadly weapon actually cause death or serious bodily injury before the
jury can affirmatively answer the deadly weapon question.  See id.; see also McCain v.
State, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000) (holding section
1.07(a)(17)(B)=s Aplain
language does not require that the actor actually intend death or serious
bodily injury; an object is a deadly weapon if the actor intends a use of the
object in which it would be capable of causing death or serious bodily injury@); Rivera
v. State, 271 S.W.3d 301, 304 (Tex. App.CSan
Antonio 2008, no pet.) (stating knife that did not cause death or serious
bodily injury could be deadly weapon if Athe
actor intended a use of the knife in which it would be capable of causing
serious bodily injury@).  Here, even assuming Appellant=s
vehicle did not cause Officer Freeto=s
death, the question for the jury was whether Appellant used or intended to use
his vehicle in a manner capable of causing death or serious bodily
injury, not whether Appellant=s
vehicle actually caused Officer Freeto=s
death.  See McCain, 22 S.W.3d at
497; Rivera, 271 S.W.3d at 304. 

2.  The Evidence is Legally Sufficient

To
determine whether the evidence supports an affirmative deadly weapon finding in
cases involving motor vehicles, we conduct a two-part analysis.  Sierra v. State, 280 S.W.3d 250, 255
(Tex. Crim. App. 2009).  We first Aevaluate
the manner in which the defendant used the motor vehicle during the felony.@  Id. 
We then Aconsider whether, during the
felony, the motor vehicle was capable of causing death or serious bodily
injury.@  Id.

Here,
the jury heard testimony that, before getting onto the interstate, Appellant
sped past a tow truck, almost hitting the tow truck before swerving to avoid a
collision and that Appellant drove erratically on Interstate 35 just before the
collision, moving from the far right lane to the far left lane, back again to
the far right lane, and then onto the shoulder where Officer Freeto=s
patrol car was parked with its emergency lights flashing.  Lovett testified Appellant=s
vehicle was traveling in excess of ninety-seven miles per hour at the time of
impact.  Lovett and Officer Malone also
testified Appellant did not hit his brakes before the impact.  The jury also heard testimony that Appellant=s
vehicle did, in fact, cause Officer Freeto=s
death; Lovett testified the patrol car had caught fire because Appellant drove
his vehicle into the back of the patrol car, and Dr. Peerwani testified Officer
Freeto had died as a result of the impact that caused the fire.








Viewing
the evidence in a light most favorable to the prosecution, a rational jury
could have determined beyond a reasonable doubt that Appellant used or intended
to use his vehicle in a manner capable of causing death or serious bodily
injury.  See Tex. Penal Code Ann. ' 1.07(a)(17);
Sierra, 280 S.W.3d at 256 (holding evidence of deadly weapon legally
sufficient when defendant exceeded speed limit, failed to maintain control of
his SUV, and in fact caused serious bodily injury to another); see also
Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at
778.  We hold the evidence was legally
sufficient to support the jury=s
verdict, and we overrule Appellant=s
fourth point.

3.  The Evidence is Factually Sufficient








In
addition to the evidence discussed above, Appellant introduced evidence that
driving above the speed limit, standing alone, does not make a motor vehicle a
deadly weapon.  For example, Officer
Malone testified that driving seventy miles per hour in a straight line within
the traffic lane is not reckless.  Lovett
similarly testified that driving seventy-five miles per hour in a sixty mile
per hour speed zone might or might not make a vehicle a deadly weapon,
depending on the way the vehicle is driven. 
However, Officer Malone testified he believed Appellant=s
vehicle was a deadly weapon because of the way Appellant was driving.  Officer Malone testified that just before the
collision, Appellant drove his vehicle at a high rate of speed and veered from
the far right lane to the far left lane, back again to the far right lane, and
then onto the shoulder where Officer Freeto=s
patrol car was parked with its emergency lights flashing.  Officer Malone specifically recalled thinking
when he saw Appellant speed past him that Appellant would kill someone driving
like that.  And Lovett testified that
Appellant was driving more than ninety-seven miles per hour in a sixty mile per
hour zone and testified, AAt that speed, in that
manner, this vehicle is easily a deadly weapon.@

Viewing
the evidence in a neutral light, we conclude a rational trier of fact could
have found beyond a reasonable doubt that Appellant used or intended to use his
vehicle in a manner capable of causing death or serious bodily injury.  See Tex. Penal Code Ann. ' 1.07(a)(17).  We cannot say that the evidence is so weak that
the jury=s
determination was clearly wrong or manifestly unjust or that the conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
jury=s
determination is manifestly unjust.  See
Lancon, 253 S.W.3d at 704; Watson, 204 S.W.3d at 414B15,
417.  We hold the evidence was factually
sufficient to support the jury=s
verdict, and we overrule Appellant=s
third point.

VI. 
Conclusion

Having
overruled each of Appellant=s
four points, we affirm the trial court=s
judgment.

 

 

ANNE GARDNER

JUSTICE

 

PANEL:  DAUPHINOT, GARDNER, and WALKER, JJ.

 

PUBLISH

 

DELIVERED:  April 15, 2010











[1]See Tex. Penal Code Ann.
' 49.08(a)
(Vernon Supp. 2009).





[2]Two other witnesses
testified that Appellant=s car had passed them
at a high rate of speed just before colliding with Officer Freeto=s patrol car.





[3]Because we hold the
variance, if any, is not material, we do not address whether the alleged
variance prejudiced Appellant=s substantial
rights.  See Gollihar, 46 S.W.3d
at 246 (holding variance fatal only if it is material and prejudices the defendant=s substantial
rights).